## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RUSSELL MITCHELL,**

        **Petitioner,**

  **v.**                                **Civil Action No.: 1:19cv10**
                                                        **(Judge Kleeh)**

**FREDERICK ENTZEL, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On January 22, 2019, the *pro se* petitioner, Russel Mitchell ("Mitchell"), an inmate at FCI Hazelton, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, challenging a disciplinary sanction, including the loss of Good Conduct Time ("GCT"). ECF No. 1.  On that same date, Petitioner paid the $5 filing fee and filed a Motion for Leave to File in Excess of Five Page Limitation Pursuant to LR PL P 3.4.4. ECF No. 2. By Order entered January 28, 2019, Petitioner's unsigned petition, memorandum in support, and motion to exceed the page limits were noted and Petitioner was directed to refile signed copies of the same. ECF No. 5. On February 6, 2019, Petitioner refiled the signed copies.[1] By separate Orders entered February 26, 2019, Petitioner's motion to exceed the page limits was granted and the Respondent was directed to show cause why the petition should not be granted.  ECF Nos. 9, 8.  After being granted an extension, on April 9, 2019, the Respondent filed a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment with a memorandum in support, attaching two sworn declarations and other exhibits. ECF Nos. 15, 16. Because Petitioner was proceeding *pro se*, on April 10, 2019,

---

[1] The signed copies were docketed as attachments to the originals.

a Roseboro Notice issued. ECF No. 17. On August 7, 2019, Petitioner filed a letter motion to extend the time for his response. ECF No. 19. By Order entered September 17, 2019, Petitioner's letter motion to extend time was construed as a motion to file a response out of time and granted. ECF No. 21. On October 15, 2019, Petitioner filed a reply to the Respondent's dispositive motion. ECF No. 23.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.

## II. Background

On March 29, 2007, after a 15-day jury trial, Petitioner was convicted in the Superior Court for the District of Columbia on one count of murder while armed, in violation of D.C. Code §§ 22-2101 and 22-4502; two counts of possession of a firearm during the commission of a crime of violence, in violation of D.C. Code § 22-4504; and one count of assault with a dangerous weapon, in violation of D.C. Code § 22-502.  See Public Information Inmate Data, ECF No. 16-1 at 8; see also Criminal Docket for D.C. Superior Court Case No. 2005 FEL 004882.[2]  On June 1, 2007, Petitioner was sentenced to a total aggregate term of incarceration of 37 years on all counts, to be followed by a five-year period of supervised release.  ECF No. 16-1 at 8.  Petitioner timely appealed, raising 4 issues: (1) insufficient evidence to support his conviction for first-degree premediated murder; (2) evidence introduced to show his motive should have been excluded as irrelevant; (3) the government's attempted impeachment of a defense witness was improper and in bad faith; and (4) the prosecution improperly elicited prejudicial "fear" testimony. On February

---

[2] Petitioner's D.C. Superior Court criminal docket is available at
https://eaccess.dccourts.gov/eaccess/search.page.3?x=-Zfpb5WFVv0MVsgg1*OvKdySAkObdraW6qq1WwpRuMHEtTjgGefR*ILrGlcM4YYtG9SK1wJptfPVajI7Sv-gbw

22, 2012, by unpublished *per curiam* opinion, the District of Columbia Court of Appeals affirmed

Mitchell's convictions and the judgment of the Superior Court.[3]

Per the BOP's online inmate locator, Petitioner is projected to be released from custody on

May 15, 2039, via GCT.[4]

Petitioner was committed to FCI Hazelton on July 10, 2007.  ECF No. 16-1, ¶8 at 2.  On

July 28, 2018, around 6:15 a.m., an FCI Hazelton correctional officer found a Pepsi can in the

common area of the cell Petitioner shared with another inmate.  See Incident Report, ECF No. 16-

1 at 13.  The Pepsi can was altered so that the top could twist off; upon inspection, the officer

discovered a one-inch silver SIM card ejector pin inside of a hidden compartment in the can.  Id.

The officer notified the Operations Lieutenant.  Id. The discovery was made at around 6:15 a.m.

and Petitioner received an incident report charging him with violating BOP Prohibited Act Code

§ 108 for "Possession, Manufacturing, Introduction of a Cell Phone" later that day. Id.

On August 1, 2018, Petitioner received Notice of a Disciplinary Hearing before the

disciplinary hearing officer ("DHO") [ECF No. 16-1 at 18] and a notice of Inmate Rights at

Discipline Hearing. Id. at 20. Petitioner signed both forms and indicated that he did wish to have

a staff member, "CCC Griffin," represent him at the hearing and did not wish to call any witnesses.

Id. at 18.

The incident report was later corrected, and a corrected copy delivered to Petitioner on

August 22, 2018.[5]  Id. at 13.  The incident report was then forwarded to the Unit Disciplinary

---

[3] See Mitchell v. United States, Case No. 07-CF-691 (D.C. Cir. Feb. 22, 2012).

[4] See Bureau of Prison's ("BOP") inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Jan. 5, 2020).

[5] Although Petitioner received his initial copy of Incident Report No. 3151615 on July 28, 2018, staff subsequently requested an extension to rewrite the incident report to reflect the change from "pending investigation" to "pending UDC."  See Request for Extension of Time to Hold UDC for Incident Report No. 3151615, ECF No. 16-1 at 16. Twenty-Eight C.F.R. § 541.7(c) requires that the Warden's approval be obtained if a hearing before the UDC is not

3

Committee ("UDC"). A hearing was held before the UDC at 11:35 a.m. on August 24, 2018. Id. at 13.  Petitioner received a copy of the UDC's request for extension of time to hold the initial hearing, which had been approved by the Warden.  Id. at 16. Petitioner's comment about the incident to the UDC was "[h]ow am I getting a cellphone shot when all that was found was a dime and pin?" Id. The UDC then referred the matter to the DHO with a recommendation that should Petitioner be found guilty, he be sanctioned with the loss of 40 days of GCT; receive 30 days disciplinary segregation; and lose 90 days of commissary, "mp3,"[6] and visiting privileges, to run concurrent. Id.

On August 30, 2018, the DHO held Petitioner's disciplinary hearing. Id. at 22. Ultimately, the DHO found Petitioner guilty, not of the Code 108 violation, but of a related act, "Disruptive Conduct Most Like Possession of a Hazardous Tool," a Code 199 violation, and sanctioned him with the loss of 31 days GCT, 30 days disciplinary segregation, and 180 days each of loss of commissary, phone, and visiting privileges. Id. at 24. Before arriving at its decision, the DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. at 23. Specifically, the DHO stated that he had relied upon the written statement of the reporting staff member and Petitioner's statement that "it is not mine." Id. The report addressed that defense, as well as the reasons for Petitioner's sanctions, stating in pertinent part that:

> In making this decision the DHO gave the greater weight of evidence to the reporting officer's written account that while packing the property of cell 323, a Pepsi can was observed sitting on the floor next to the first locker closest to the cell door.  The top of the can had been altered and could twist off.  The can was empty but had a hidden compartment which contained a one inch silver sim card ejector pin than to your claim that it is not yours.  This decision was based on the fact that the sim card ejector pin was discovered within a Pepsi can sitting on the floor of

---

[6] held within five workdays after an incident report is completed. Because there was more than a 5-day time lapse between the date of the incident and the date Petitioner was ultimately served with the copy of the updated incident report, the Warden's approval was requested and received, permitting the UDC hearing to proceed. Id.

[6] An MP3 player is a portable device that plays digital music files.

your assigned cell and neither you nor your cell mate claimed ownership of the sim card ejector pin.

Your contention that it is not yours was considered but [is] insufficient to excuse you from the offense. Program Statement 5270.09, Inmate Discipline Program, Appendix C, page 39, states that it is your responsibility to keep your area free of contraband, and this includes contraband on one's person or under one's domain or control. In addition, neither you nor your cellmate admitted responsibility for the sim card ejector pin . . . Therefore, the rule of constructive possession applies in this case. The concept is that every inmate assigned to a particular area is responsible for objects found in the common area unless someone admits responsibility. This concept is necessary to keep inmates from evading responsibility for their acts by hiding contraband in common areas which are somewhat under their control. As no one assigned to this living space has admitted they were the party responsible for the sim card ejector pin the dho [sic] applies the concept of construction [sic] possession and finds the occupants of N-D unit cell 323 equally responsible for the sim card ejector pin.

Furthermore, the sim card ejector pin is designed and used for the sole purpose of safely gaining access to the SIM tray which houses the SIM card within a cellular phone that is used to identify and authenticate subscribers on mobile electronic devices. There is no logical reason for you to possess such a tool except to gain access to the SIM card. Your decision to possess [a] sim card ejector pin constituted the Disruptive conduct most like Possession[] 0f [sic] a hazardous tool.

Id. Further, the DHO explained that the sanctions imposed were intended to let inmates know that

they, and they alone, will be held responsible for their actions and behavior at all times,

because any action on the part of any inmate [to] manufacture, possess, or introduce into the institution, a tool or piece of equipment which may be used in an escape or escape attempt, poses a serious threat to the orderly operation and security of the institution, as well as to the health, safety and welfare of not only himself, but to all other inmates and staff.

Id. at 24. The DHO Report advised Petitioner that he had the right to appeal this action within 20

calendar days under the Administrative Remedy Procedure. Id.

The DHO report indicates that a copy of it was given to Petitioner on February 26, 2019,

almost six months after the hearing. Id. Per BOP policy, Petitioner had twenty (20) days after

receiving the written disciplinary report to appeal the DHO's decision; the deadline to file his

appeal was March 18, 2019. Petitioner did not file an administrative appeal before the deadline. ECF No. 16-2 at 2.

Petitioner filed for a writ of habeas corpus in this Court on January 22, 2019, prior to receiving the DHO's written disciplinary report.  ECF No. 1.

### III. Contentions of the Parties

#### A. The Petition

In his petition, Mitchell asserts that the BOP violated the Accardi Doctrine[7] and his right to due process and by failing to timely provide him with a copy of the DHO report containing the written findings of fact regarding the incident report within the requisite 20-day period, thereby failing to follow its own policy and preventing him from being able to appeal. ECF No. 1-4 at 5.

In his memorandum in support, Petitioner contends that despite the requirement of 28 C.F.R § 541.5(a) that "you will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident," he was not served with a copy of the incident report "until 27 days later on August 24, 2018,"[8] and that he actually received "a notice of disciplinary hearing before the (DHO) on August 1, 2018, 23 days prior to receiving the initial incident report." Id. at 2 - 3. Further, he argues that to "this present day" he has "yet to receive" a copy of the DHO report. ECF No. 1-5 at 2.

He contends that as a result of the September 8, 2018 [sic] DHO hearing, he was sanctioned with the loss of 41 days of GCT [sic], as well as 180 days of loss of phone, "email + mp-3," commissary, and visitation privileges. Id.

---

[7] The Accardi Doctrine provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

[8] Mitchell has attached a copy of the initial incident report to his petition. See ECF No. 1-1.

Petitioner avers that he did not administratively exhaust his claim because "[s]taff's actions prevented me from pursuing any administrative remedy." ECF No. 1-4 at 7 – 8. He asks the Court to excuse his failure to exhaust, because the BOP's failure to provide him with a copy of the DHO report prevented him from appealing the DHO's decision. ECF No. 1-5 at 5.

For relief, Petitioner requests that his conviction for Prohibited Act Code § 108 [sic] be vacated and expunged from his record; his custody level score be recalculated [ECF 1-4 at 8] and his GCT and other privileges be restored. ECF No. 1-5 at 1

**B. Respondent's Motion to Dismiss or for Summary Judgment**

Respondent advances the following arguments in response to the petition:

1. Petitioner filed his habeas petition without first exhausting his administrative remedies, and he has not established that administrative review was unavailable or futile.

2. Even if Petitioner had exhausted his administrative grievances, he has not pleaded a cognizable legal claim.

3. To the extent the Petitioner is challenging any disciplinary sanction except the loss of GCT, such a challenge is not cognizable in a habeas petition.

4. To the extent that Petitioner alleges that the BOP improperly changed his security classification, that claim is not cognizable in a habeas petition because it impacts the conditions of confinement and not the fact or duration of his incarceration. ECF No. 16 at 7 – 16.

**C. Petitioner's Response in Opposition**

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same, arguing that the requirement of administrative exhaustion in a § 2241 action is judicially imposed and the Court has discretion to waive the requirement in "pressing circumstances." ECF No. 23 at 1. Further, he argues that he can show "cause and prejudice" for failing to exhaust his administrative remedies, i.e., that the BOP creates an "impediment" to administrative exhaustion, because "[m]ore often than not, the inmate never receives his DHO Report for several weeks or, quite often, several months. Generally, by the time the inmate is provided a copy of the DHO

Report, he is time barred from filing his disciplinary appeal." Id. at 2. He repeats his allegation regarding discrepancies in the dates when the incident report was first written, later rewritten, and provided to him, contending that the reasons given for the violation of the 5-day time frame were "pretextual," arguing for the first time that this delay was prejudicial to him, because the SIM card pin was placed in his cell without his knowledge by another inmate; and the only witness who could have attested to this, a different inmate, was rendered unavailable by that inmate's transfer to another institution before Petitioner's DHO hearing. Id. at 7.

## IV. Legal Standard

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 Summary Judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 - 52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

## V. <u>Discussion</u>

### A. <u>Exhaustion of Administrative Remedies</u>

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. See <u>McCling v. Shearin</u>, 90 F. Appx. 444, 445 (4th Cir. 2004). Proper exhaustion of administrative remedies must occur; the inmate must utilize all available administrative remedies, and adhere to deadlines and procedural rules imposed by the agency. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006). However, 28 U.S.C. § 2241, the statute authorizing habeas corpus proceedings, does not require exhaustion of administrative remedies prior to bringing suit in a court of law. <u>See</u> 28 U.S.C. § 2241; <u>Reeder v. Phillips</u>, 1:07-cv-138, 2008 WL 2434003 at *2 (N.D. W.Va. June 12, 2008). Courts will generally enforce the exhaustion

requirement, as doing so promotes efficiency and protects administrative agency authority. Woodford v. Ngo, 548 U.S. at 89.   Courts may only waive the exhaustion requirement "upon a showing of cause and prejudice." McCling v. Shearin, 90 F. Appx. at 445.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving **written notification** of the disciplinary action. See 28 C.F.R. § 542.14(d)(2) (emphasis added). If unsatisfied with that response, the petitioner may file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level and the inmate is not given the opportunity to correct the defect and resubmit, the inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.17(c). The Central Office may affirm the rejection, direct the submission be accepted at the lower level, or accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).

Here, there is no dispute that Petitioner failed to exhaust his administrative remedies regarding his disciplinary proceeding. Respondent attaches to its memorandum in support a sworn declaration from Howard Williams, Legal Assistant at the BOP's Mid-Atlantic Regional Office ("Williams Decl."), who is responsible for reviewing administrative remedy appeals at that office. See ECF No. 16-2 at 1 – 2. Williams' April 4, 2019 declaration avers that at the time the declaration was prepared, Petitioner had only ever filed two administrative remedy requests during his incarceration, neither of which appealed the disciplinary sanctions of Incident Report 3151615. Id. at 2. Moreover, Williams attaches a copy of Petitioner's Administrative Remedy Generalized Retrieval, Sanitized Format, showing that those two administrative remedies Petitioner ever filed were filed in May and July 2013, over five years before the DHO at issue here. Id. at 4 – 5.

Respondent contends that Petitioner received a copy of the written disciplinary report on February 26, 2019, making the deadline for filing an administrative appeal March 18, 2019.  Petitioner alleges that not only did he not receive a copy of the report within the 20-day period of its issue, he was never given a copy of it all, thereby preventing him from being able to appeal its findings. However, the undersigned finds this argument suspect, given that the DHO report was not even issued until February 21, 2019, which was one month *after* Petitioner had already filed suit. Therefore, Petitioner's pending habeas petition is subject to dismissal for failure to exhaust. Moreover, even if the Court were inclined to excuse exhaustion, Mitchell's petition is due to be dismissed anyway, because it fails to state proper grounds for relief.

**B. <u>Prison Disciplinary Proceedings</u>**

Prison disciplinary proceedings are not criminal prosecutions. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." <u>Id.</u> When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5) providing impartial fact finders.

Id. at 564-571.  However, due process requirements are defined by the United States Constitution, not an agency's regulations or guidelines.  Sandin v. Conner, 515 U.S. 472, 485 (1995).  Therefore, a violation of an agency regulation alone does not immediately constitute a constitutional claim. United States v. Caceres, 440 U.S. 741, 751-52 (1978).

In the present case, Petitioner was provided all the due process required of disciplinary proceedings. First, despite Petitioner's contentions to the contrary, alleging that he never received a copy of his incident report until "27 days later on August 24, 2018,"[9] it is apparent that Petitioner was in fact provided with a copy of his incident report on July 28, 2018—the same day the incident occurred, because Petitioner has attached a copy of the same to his petition, refuting his own claim. See ECF No. 1-1. This copy appears to be the very first iteration of the incident report; at that point, only the top half of the incident report has been filled out,[10] up to § 16, which indicates it was delivered to him by a staff person by the name of "Sykes," on July 28, 2018 at 5:20 p.m. See ECF No. 1-1. Respondent contends that the first copy of the incident report was given to Petitioner at around 11:00 a.m. on July 28, 2018, the day the SIM card pin was discovered, and that Petitioner received a corrected copy of the same on August 22, 2018. Respondent has produced its own fully-completed copy of Incident Report No. 3151614 with Parts I, II, and III filled in, revealing the UDC action completed. See ECF No.16-1 at 13 – 14. This copy indicates that the incident report was initially provided to Petitioner at around 11:00 a.m. on July 28, 2018, and then after being re-written, was then re-provided to Petitioner at 1:15 p.m. on August 22, 2018. Id. Whichever time is

---

[9] Petitioner's response in opposition to Respondent's dispositive motion also makes a confusing allegation that "the incident report was written and filed on July 26, 2018, although the request form shows a date of July 28, 2018." ECF No. 23 at 6. Because the incident at issue did not occur until July 28, 2018, this is a logical impossibility; moreover, it is a vague and conclusory allegation, unsupported by any evidence, and will not be given further review.

[10] Part I of the document is the incident report; Part II is for "Committee Action," i.e., the results of the UDC after investigation. Part III, on the second page (not included in the copy Petitioner attached),  is for "Investigation."

correct, it is clear from the record that Petitioner received at least two copies of written notice of the charges against him on July 28, 2018, and then another written notice of the charges against him on August 22, 2018, when he was given a copy of the updated incident report, all well in advance of the requisite twenty-four hours before his hearing before the DHO on August 30, 2018. Second, after the disciplinary hearing, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Third, Petitioner was afforded the opportunity to call witnesses on his own behalf, which he declined, and to present a defense during the hearing.  Fourth, Petitioner was advised of his right to a staff representative during the hearing; he requested the presence of a staff representative, and a staff representative attended the hearing with Petitioner. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b).

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985).  When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed].  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . .

Id. at 457. In this case, the DHO found Petitioner had committed the act of "Disruptive Conduct Most Like Possession of a Hazardous Tool," in violation of Prohibited Act Code § 199. Because the SIM card ejector pin was found in a common area of the cell, shared by Petitioner and one other inmate, and Petitioner's only defense was that the contraband did not belong to him, the undersigned finds that the DHO's decision is supported by some evidence.

The undersigned finds that Petitioner's later-added contention, in his response to the Warden's dispositive motion, that he actually *did* have a witness who could have attested to the fact that the SIM card pin belonged to another inmate, but that that other inmate's transfer to another facility before his DHO hearing rendered him unable to attend has little merit; Petitioner has not named this other inmate or proffered what this inmate's testimony would have been; Petitioner was clearly advised, in writing, as early as August 1, 2018, only four days after the incident, of his "right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf" when he received and signed a copy of his Inmate Rights at Discipline Hearing on August 1, 2018 at 12:25 p.m. See ECF No. 16-1 at 20. Nonetheless, the February 21, 2019 DHO report indicates that Petitioner waived the right to witnesses [ECF No. 16-1, § III(C)(1) at 22]; further, at § III(C)(4) of the DHO report, which addresses whether "unavailable witnesses were requested to submit written statements and those statements were considered (each witness name and statement listed below)," the DHO indicated "n/a." ECF No. 16-1 at 22.  Clearly, had Petitioner had such a key witness to support his claim that the SIM card pin belonged to someone else, he would have at least attempted to proffer that information.

**C. <u>Other Sanctions Besides Loss of GCT</u>**

Finally, the undersigned notes that a petition for habeas corpus relief allows a federal inmate to seek "immediate release or a speedier release from" confinement.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498 (1973). Therefore a § 2241 claim only permits a petitioner to assert a liberty interest. In the instant case, aside from the loss of GCT, Petitioner's other sanctions, including the 30 days of disciplinary segregation, loss of commissary, phone, and visitation privileges, do not involve a liberty interest because they do not impact the length of his confinement.  Therefore, they do not state a claim for relief.

D. **Security Classification**

Likewise, to the extent that Petitioner alleges that the BOP improperly changed his security classification, the same is not cognizable in a habeas petition. A federal prisoner has no constitutional right to a specific custodial security classification. Moody v. Daggert, 429 U.S. 78, 88, n 9 (1978). An inmate's classification is administrative and prison officials can change an inmate's security classification "for almost any reason or no reason at all." Brown v. Ratledge, No. 7-16-CV-00303, 2017 WL 4404248, at *7 (W.D. Va. Sept. 29, 2017, aff'd, 709 F. Appx. 215 (4th Cir. Jan. 23, 2018) (per curiam) (citations omitted). Moreover, any challenge to a custody or security classification is not cognizable in a § 2241 habeas petition because such a challenge addresses the conditions of confinement and not the fact or duration of incarceration. See Moore v. Driver, No. 1:07CV166, 2008 WL 4661478, at 3 (N.D. W.Va. Oct. 21, 2008) (an inmate "cannot bring his claim regarding his custody classification in the context of § 2241 petition, because § 2241 petitions generally cannot be used to challenge conditions of confinement") (citing Preiser, 411 U.S. at 499-500).

E. **Accardi Violation**

Following a disciplinary hearing, BOP policy requires the DHO to provide the inmate with a written report, ***ordinarily*** within 15 working days after the DHO makes his/her decision. See 28 C.F.R. § 541.5(a). Therefore, the policy does not *mandate* that an inmate must receive a DHO report within 15 days or within any specified time. Therefore, there was no violation of the Accardi Doctrine.

## VI. **Recommendation**

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 15] be **GRANTED**, and the

Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1-4] be **DISMISSED with prejudice[11]** for the failure to exhaust administrative remedies.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is **DIRECTED** to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to transmit a copy electronically to all counsel of record.

---

[11] Normally, dismissals for failure to exhaust administrative remedies are without prejudice, but because Petitioner is now time-barred from administratively exhausting this claim, the dismissal must be with prejudice.

This Report and Recommendation completes the referral from the district court. Accordingly, the Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

DATE: January 9, 2020

/s/ *Michael John Aloi*_____

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE